No. 12209

IN THE SUPREME COURT OF THE STATE OF MONTANA

1972

————————————

THE STATE OF MONTANA, on the Relation of
the State Highway Commission of the State
of Montana,

Relator,

-vs-

THE DISTRICT COURT OF THE THIRTEENTH JUDICIAL
DISTRICT OF THE STATE OF MONTANA, IN AND FOR
THE COUNTY OF STILLWATER, and THE HONORABLE
JACK D. SHANSTROM, Presiding District Judge,

Respondents.

————————————

ORIGINAL PROCEEDING:

Counsel of Record:

For Relator:

William T. Kelly argued, Billings, Montana.
Daniel J. Sullivan argued, Helena, Montana.

For Respondents:

Richard J. Carstensen argued, Billings, Montana.

————————————

Submitted: March 17, 1972

Decided: JUL 2 7 1972

Filed: JUL 2 7 1972

<u>Thomas J. Kearney</u>
Clerk

Mr. Chief Justice James T. Harrison delivered the Opinion of the Court.

This is an original proceeding. Relator, Montana State Highway Commission, seeks an appropriate writ to require the respondent district court to vacate and annul that portion of its order of January 28, 1972, fixing October 24, 1971, as the date for determining the actual value of the condemned property for the measure of compensation of the interests therein of defendant Robert Lawrence Fradet.

The condemnation action involved is cause No. 4033, pending in the district court of Stillwater County, entitled:

> "The State of Montana, acting by and through the State Highway Commission of the State of Montana, Plaintiff, vs. Gerald R. Fradet, Robert Lawrence Fradet, Evalyn L. Fradet, First National Park Bank of Livingston, and William E. Buell, et al., Defendants."

Upon the filing of the application, counsel was heard ex parte. Thereafter an order was issued requiring respondent court to be and appear before this Court on a day certain and show cause why an appropriate writ should not be granted.

From the record it appears the condemnation action hereinbefore entitled was instituted by the filing of the complaint in the district court on January 19, 1968, and a lis pendens was filed the same day with the clerk and recorder of Stillwater County. Copy of the complaint was served on Gerald R. Fradet, at that time the admitted owner of the property, on January 25, 1968 and summons was served on him January 31, 1968. On the same dates, Robert Lawrence Fradet, the father of Gerald R. Fradet, was also served with a copy of the complaint and summons. Evalyn Fradet, mother of Gerald R. Fradet, was served with the complaint and summons on January 23, 1968.

On February 7, 1968, the three Fradets filed a motion to dismiss, motion to strike, motion for a more definite statement,

- 2 -

and a statement of defendants' claims. These motions were heard by the district court on February 26, 1968, and on March 8, 1968, the court entered its findings of fact and concusions of law in favor of the Fradets, because of the failure of the Highway Commission to negotiate or offer to purchase a parcel of the land sought to be condemned.

An appeal was taken by the Highway Commission to this Court and the decision of the district court was reversed on March 11, 1969. The district court was ordered to strike its findings of fact and conclusions and enter a preliminary order of condemnation. State Highway Commission v. Fradet, 152 Mont. 436, 451 P.2d 826.

It should be noted here that in their motion to dismiss, Fradets alleged that because of failure to serve a copy of the complaint with copy of the summons upon two of them, the court lacked jurisdiction and there was an insufficiency of service of process. At the hearing on defendants' February 7, 1968, motions, the district court went into the matter of this service. The Highway Commission contended that it should make no difference if the summons and complaint were served separately, as long as they were served before the twenty day statutory period. It further contended that there had been no special appearance by defendants for the purpose of contesting jurisdiction; that an answer was filed at the same time and that would constitute a waiver of any special appearance since the new civil rules do not apply to eminent domain actions. Discussion was had between court and counsel which concluded with this comment by the judge:

> "The Court, I think, must hold that this does
> not constitute such a fatal defect as to deprive
> this Court of jurisdiction of the cause."

Thus, the district court agreed with the Commission that service of complaint and summons on separate dates, yet prior

to the statutory twenty day notice for hearing, was not a viola-
tion of the service requirements of section 93-9909, R.C.M. 1947.

The procedural history of this action subsequent to our
March 11, 1969 opinion reversing the district court is complex
and need not be recited here in its entirety. However, certain of
those proceedings should be set forth as necessary background for
the present application.

On May 25, 1971, the Highway Commission moved "the [district]
Court for an order determining and fixing a definite date with re-
spect to which compensation shall be assessed prior to setting
a date for a Commission's Hearing * * *."

By order of July 14, 1971, the district court found:

"5. Neither Defendant GERALD R. FRADET or ROBERT
L. FRADET were (sic) ever validly served with
Summons by delivery of a copy of both the Summons
and Complaint on them at the same time as is re-
quired by Section 93-9909, R.C.M. 1947."

It then ordered:

"* * *that it cannot now fix the date for the
determination of values for any Defendants other
than the Defendants EVALYN L. FRADET and the
Defendant FIRST NATIONAL PARK BANK OF LIVINGSTON,
for the reason that the Plaintiff has not yet
made a valid service of Summons in this condemna-
tion action/ony of the other Defendants named in
the Complaint as required by statute and not on
any additional Defendants the Plaintiff may pro-
propose to add to this action and on whom no
Summons has yet been issued."

The "additional Defendants" which the July 14 court order
contemplates being added to the present action by plaintiff
Highway Commission would include holders of outstanding bonds
sold by the now defunct Columbus Irrigation District in 1919 and
1920. The tract which is the subject of this condemnation action
was included within the boundaries of the Columbus Irrigation
District at the time the bonds were sold. Only one such bond
was ever paid and there now remain outstanding bonds in the total
principal amount of $100,000. Among the alleged remaining assets
of the Columbus Irrigation District is the lien of the bond

- 4 -

assessment on the subject real property.

As a result of the bond sale, Civil Case No. 2527 was commenced on May 31, 1940, entitled:

> "The National Park Bank of Livingston, a corporation, and William E. Buell, Plaintiffs, vs. (among other defendants) The State of Montana, Stillwater County, and Columbus Irrigation District, a corporation, Daniel Nice, and all other persons, as defendants."

This action is still pending in the district court of the thirteenth judicial district, Stillwater County. Due to this action and to the alleged possible lien rights of all persons purchasing the outstanding irrigation district bonds, it is argued that a great number of defendants or their executors and administrators, whose identities are unknown, may have a lien of assessment, a claim, or an encumbrance of record against the real property involved in this condemnation action.

The Commission alleges the district court order of July 14, 1971, places an additional duty on the state to quiet title against all such persons who might claim a lien on the property subject to this condemnation action.

The July 14 order also precluded the setting of a date for determination of values due to the purported invalid service of summons upon Robert L. Fradet and others. By motion dated and served October 28, 1971, defendant Robert L. Fradet attempted to "acknowledge service of Summons in this action * * * for the purposes of establishing the date upon which the value of his interest in such property must be fixed * * *." The motion specified October 28, 1971, as the "acknowledged" date of service. It also renewed the Fradets' motion that the district court appoint condemnation commissioners and fix a date for the condemnation hearing.

The Commission then moved the district court in December 1971 to quash and strike the Fradets' acknowledgment of service

motion and to establish a date in January 1968 as the proper date for valuation. The Commission made further efforts to have a 1968 date established for valuation purposes by moving the district court for summary judgment and for the taking of judicial notice of certain records showing Fradets' voluntary submission to the court's jurisdiction.

In response to the various motions filed by the Commission and the Fradets, the court ruled on January 28, 1972, that the plaintiff Commission nominate a condemnation commissioner and further ruled that because defendant Robert L. Fradet had then filed his acknowledgment of service, as to that defendant the date of determining the actual value of the property would be October 24, 1971.

The record also shows that on January 28, 1972, the district court entered a separate order dismissing Gerald R. Fradet as a defendant in the action as of January 20, 1972. The order stated that such dismissal would not have any affect on any claimed service of process made on Gerald R. Fradet prior to this date. We note here that at the time this action was filed Gerald R. Fradet was the record owner of the real property which is the subject of this condemnation action. Gerald R. Fradet remained fee owner of the tract until May 1, 1970, when he executed a quitclaim deed conveying the subject tract back to his father, defendant Robert Lawrence Fradet.

In answering this Court's order of February 18, 1972, requiring respondents to appear and show cause, respondents moved on March 14, 1972, to dismiss the order because the application "does not state facts sufficient to warrant the issuance of such Order." Respondent district court acknowledged that it had stayed all proceedings in Civil Cause No. 4033, Stillwater County, pending further order of this Court.

The issues to be determined here are basically three:

(1) Is this a proper case for the use of the writ of supervisory control, as was issued by order of this Court dated February 18, 1972?

(2) What date shall be used for the purpose of assessing compensation for all property actually taken and for determining the basis of depreciation in value of property not taken, but injuriously affected?

(3) Should the Highway Commission be required in an eminent domain action to bring a quiet title action against all parties who have possible liens or encumbrances upon the land subject to condemnation; in other words, should the Commission be required to name or interplead any additional parties as defendants in this action?

Examining the first issue, we find that the criteria for the use of the extraordinary writ of supervisory control are well established in Montana law. Basic authority for its use is found in Article VIII, Section 2, of the Montana Constitution, which grants this Court "general supervisory control over all inferior courts* * *". Section 3 of the same Article, though not specifically enumerating the supervisory writ, grants the Court power to issue and hear "such other original and remedial writs as may be necessary or proper to the complete exercise of its appellate jurisdiction."

Rule 17(a), M.R.App.Civ.P., provides for the use of original and remedial writs "* * *under conditions making due consideration in the trial courts and due appeal to this court an inadequate remedy, or when supervision of a trial court other than by appeal is deemed necessary or proper." It should be noted that Rule 1, M.R.App.Civ.P., does not enumerate any appeal procedure, other than appeal from final judgment which could be utilized by relator Highway Commission under the circumstances of this case.

Montana case law further defines the criteria for the use of the writ. In State ex rel.Whiteside v. District Court, 24 Mont. 539, 563, 63 P. 395, this Court stated one of the functions of the writ is to control the course of litigation in the inferior courts when:

"[They] by a mistake of law, or willful disregard of it, are doing a gross injustice, and there is no appeal, or the remedy by appeal is inadequate."

To the same effect, see State ex rel. City of Helena v. Helena W.W.Co., 43 Mont. 169, 115 P. 200.

This Court further stated in State ex rel. Thelen v. District Court, 93 Mont. 149, 156, 17 P.2d 57, that application for the writ is timely if made:

"* * * within a reasonable time after the action sought to be remedied was taken."

The facts and circumstances of each particular case are determinative of timeliness.

In State ex rel. Regis v. District Court, 102 Mont. 74, 77, 55 P.2d 1295, the Court said the writ may also be employed:

"* * * to prevent extended and needless litigation."

The facts here show that two orders of the district court dated July 14, 1971 and January 28, 1972, are primarily responsible for the Commission seeking the writ of supervisory control. The orders essentially require the Commission to quiet title against all possible lienholders and to use a valuation date more than three years beyond the alleged proper date. Neither order is appealable other than following final judgment. Extended and needless litigation would result from allowing the orders to stand, if relator is correct in its assertion that each order is based upon mistake of law or disregard of law by the district court.

The facts and matters set forth in relator Commission's application make it clear that this is a proper case for issuance

of the writ of supervisory control dated February 18, 1972, requiring the district court to show cause why a further appropriate writ should not be granted. We find that gross injustice to relator may well result, absent a hearing on its application. Since the major issue of this proceeding is the determination of a valuation date, and the district court's order of January 28, 1972, is alleged to have erroneously set such date, the application of relator dated February 14, 1972, was reasonably and timely filed. Respondents' motion to dismiss these proceedings is therefor denied.

The important issue bringing respondents before this Court is that of determining the proper date to assess compensation for property taken and depreciated. The Commission contends the district court's order of January 28, 1972, setting a valuation date of October 24, 1971, as to defendant Robert L. Fradet, should be annulled, since it would allow defendant to offer evidence at the Commissioner's hearing of comparable sales several times higher in amount than that received for similar property sold in 1968.

Montana statutes clearly specify the date with respect to which compensation in eminent domain cases shall be assessed. Section 93-9913, R.C.M. 1947, states in pertinent part:

> "For the purpose of assessing compensation the right thereto shall be deemed to have accrued at the date of the service of the summons, and its actual value as of that date shall be the measure of compensation for all property to be actually taken, and the basis of depreciation in value of property not actually taken, but injuriously affected. * * *" (Emphasis added)

This Court in State Highway Commission v. Jacobs, 150 Mont. 322, 326, 435 P.2d 274, stated:

> "The compensation due to the defendants * * * is determined by the actual value of the land at the date on the service of the summons * * *."

Section 93-9909, R.C.M. 1947, sets forth the statutory requirement for service of summons in condemnation proceedings. It provides:

> "The clerk must issue a summons, which must contain the names of the parties, a description of the lands and other property proposed to be taken, a statement of the public use for which it is sought, and a notice to the defendants to file and serve upon the plaintiff an answer within fifteen (15) days from date of service of summons and to appear before the court or judge, at a time and place therein specified, and show cause why the property described should not be condemned as prayed for in the complaint. Such summons must, in other particulars, be in form of a summons in a civil action, and must be served in like manner upon each defendant named therein, at least twenty (20) days previous to the time designated in such notice for the hearing. A copy of the complaint must be served, with the summons, upon each defendant named. But the failure to make such service upon a defendant does not affect the right to proceed against any or all other of the defendants, upon whom service of summons had been made."

Defendants Fradet do not now contend that the district court lacks jurisdiction over any of them. They contend the question of valuation date arises because service of process was not valid; was not made in accordance with statute as to defendants Gerald R. Fradet and Robert L. Fradet. They allege that section 93-9909, R.C.M. 1947, requires service of summons and complaint on the same day.

Defendants cite as authority that part of section 93-9909 which states:

> "A copy of the complaint must be served, with the summons, upon each defendant named."

Having given the "same day" interpretation to the foregoing sentence of the service statute, defendants then cite State ex rel. McMaster v. District Court, 80 Mont. 228, 260 P. 134; State v. Aitchison, 96 Mont. 335, 30 P.2d 805; and Housing Authority v. Bjork, 109 Mont. 552, 98 P.2d 324, for the proposition that where the right of eminent domain is sought to be exercised, there must always be rigorous compliance with provisions of the law.

The record shows that service upon both Gerald R. Fradet and his father, Robert L. Fradet, was made on different dates. In each instance, the complaint was served on January 25, 1968, and summons on January 31, 1968. The hearing, however, was set for February 20, 1968, in conformity with the twenty day notice requirement of Section 93-9909, R.C.M. 1947.

The district court's order of July 14, 1971, refusing to fix a date for determination of value was based upon a finding in conformity with the Fradets' allegations set forth above that service of summons was invalid. That order is in error.

First, the district court determined in its hearing on February 26, 1968, that the fact of serving summons and complaint on separate dates did not deprive the court of jurisdiction over the cause. This Court did not disturb that portion of the district court's decision on appeal. State Highway Commission v. Fradet, 152 Mont. 436, 451 P.2d 826. It should be noted that the district judge presiding at the February 26, 1968, hearing died, and a subsequent judge rendered the orders at issue.

The service made upon the Fradets being sufficient to give the court below jurisdiction, we need not consider whether the Fradets' February 7, 1968 answer and February 26, 1968, appearance constituted a voluntary general appearance waiving jurisdictional defects in the service of summons. It remains for us to determine if the service of summons was otherwise defective in a manner precluding the setting of January 31, 1968, as the valuation date. We conclude that service of the summons was not defective.

The wording of section 93-9909, R.C.M. 1947, relied upon by the Fradets, does not mandate service of summons and complaint upon the same date. We are well aware of the rule that strict compliance with statutory requirements must be had in eminent domain proceedings. On the other hand, this Court is

cognizant of the major objective of the eminent domain statutes ---to give the landowner fair notice. As we stated in Housing Authority v. Bjork, 109 Mont. 552, 556, 98 P.2d 324:

> "The due process clause, in addition to its requirement of public use and just compensation, protects the land owner from the adoption of any form of procedure in eminent domain cases which deprives him of a reasonable opportunity to be heard and so to present such objections and claims as he is entitled to make."

Section 93-9909, R.C.M. 1947, read as a whole, is clearly intended to give the landowner-condemnee notice of what is proposed to be taken and why; its further objective is to give the landowner twenty days' notice to prepare for the hearing. We interpret the section's requirement that a copy of the complaint "must be served, with the summons" to be effectively met, so long as both are served at least twenty days prior to the time designated for hearing. Such service will give fair notice of the hearing to the condemnee regardless of whether the summons and complaint are served on separate dates. Here, timely service was accomplished by the Commission, and in our opinion it was a valid and sufficient service for purposes of setting a valuation date, as well as for purposes of jurisdiction.

Thus, in accordance with section 93-9913, R.C.M. 1947, January 31, 1968, the date Gerald R. Fradet received service of summons, is the proper valuation date. Gerald R. Fradet was then the owner of the property. His deed to the property was dated and recorded August 30, 1967. Robert L. Fradet, though reacquiring ownership of the property subsequent to the time of taking, has no standing to "acknowledge service" of the summons in October 1971. Gerald R. Fradet on January 31, 1968, was the proper party defendant to receive service of summons. This Court in State Highway Commission v. Robertson & Blossom, 151 Mont. 205, 441 P.2d 181, held that the state may rely on record title. Nichols on Eminent

Domain, 3rd Ed., Vol. 2, § 5.1[4], states:

> "* * * it is the owner of the property <u>at the
> time of the taking</u> who is entitled to compen-
> sation."

The district court's dismissal of Gerald R. Fradet from the
action effective June 20, 1972, has no effect on the validity
of service of summons on him.

As to the third issue to be decided, it is apparent that
the district court's order of July 14, 1971, requires the Commis-
sion to bring a quiet title action against additional defendants,
being all those who may claim some lien or encumbrance upon the
subject property. The possible existence of lienholders was
raised by the two earlier actions, noted above, involving bonds
of the now defunct Columbus Irrigation District.

Respondents and the Commission believe that the prevailing
view is that a quiet title action is not required and no additional
defendants need be named. Respondents note that the irrigation
district cases have been dormant for years; that none of the
Fradets are named as parties in either of the earlier actions;
and that no one has filed any claim or lien of any kind against
any of the Fradets.

The law is well stated in Nichols on Eminent Domain, 3rd Ed.,
Vol. 2, § 5.74:

> "Although there is authority to the contrary, a lien
> is not a proprietary interest or estate in land, but
> is a remedy against it, and, as the legislature may
> constitutionally impair a remedy without compensa-
> tion, when land subject to a lien is taken by eminent
> domain, the holder of the lien is not entitled to be
> made a party, or to recover compensation from the
> condemnor. It is, however, well settled that the award
> stands in place of the land, and is subject to the
> same liens, and that consequently a lienor may proceed
> against the award upon general equitable principles,
> and without the aid of any statute. He may have his
> lien satisfied out of the fund awarded to the owners
> of the legal title as compensation for the land in
> advance of other creditors."

Thus, the lienholders are relegated to claims against the ultimate
award.

Furthermore, in Montana it is established that a mortgage does not create an estate in real property but is mere security for payment of a debt or discharge of an obligation---it creates a lien upon the property. Cornish v. Woolverton, 32 Mont. 456, 81 P. 4; Barth v. Ely, 85 Mont. 310, 278 P. 1002. Therefore, Nichols on Eminent Domain, 3rd Ed., Vol. 2, § 5.741, states that in jurisdictions such as Montana:

> "* * * in the absence of express statutory requirement, the mortgagee need not be made a party, or be notified of the proceedings, and he is not entitled to compensation from the condemnor."

It has also been held that judgment creditors have no estate or proprietary interest in land of the judgment debtor, and judgment creditors need not be joined as parties in eminent domain actions for the purpose of cutting off the lien of their judgments. Nichols on Eminent Domain, 3rd Ed., Vol. 2, § 5.742.

We hold that it is unnecessary for the Commission to bring a quiet title action or name additional defendants. As a practical matter, it is unlikely that lien claimants exist. A lis pendens was filed in January 1968, and no claimants have appeared. Any parties not now named who may later claim a lien or encumbrance upon the land may satisfy such claim from the award made to the Fradets.

Accordingly, we hereby issue a Writ of Supervisory Control directed to the district court of the thirteenth judicial district, in and for the county of Stillwater, ordering:

(1) That the order of the district court fixing October 24, 1971, as the valuation date as to defendant Robert L. Fradet be vacated and set aside;

(2) That the date of January 31, 1968, be entered as the proper date for the purpose of assessing compensation for all property actually taken and for determining the basis of

depreciation in value of property not actually taken but injuriously affected; and

(3) That the district court's order of July 14, 1971, ruling that it cannot now fix the date for determination of values and requiring plaintiff, in effect, to name or interplead any additional defendants, be vacated and set aside.

IT IS SO ORDERED.

*[signature]*
_____
Chief Justice

We Concur:

*[signature: John Conway Harrison]*

*[signature]*

*[signature]*

*[signature: Wesley Castles]*

Associate Justices.